William O. Wagstaff III — 041322009
The Wagstaff Firm, P.C.
*Attorneys for Plaintiff*
75 South Broadway Suite 400
White Plains, New York 10601
(914) 226-3300
william@wagstaff.legal

Neal Wiesner — 007942004
Wiesner Law Firm, P.C.
*Attorneys for Plaintiff*
34 East 23rd Street — 6th Floor
New York, New York 10010
(212) 732-2225
nwiesner@wiesnerfirm.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

------------------------------------

**MAURICE GORDON, SR. individually and
as Administrator of the ESTATE of
MAURICE GORDON, JR., RACQUEL BARRETT,**

                Plaintiffs,            **COMPLAINT**

    -against-

**RANDALL WETZEL, GURBIR SINGH GREWAL,**    **TRIAL BY JURY DEMANDED**
**individually and in his official**
**capacity as Attorney General for the**
**State of New Jersey, PATRICK J.**
**CALLAHAN, individually and in his**    **Docket No.**
**official capacity as Colonel of the**
**New Jersey State Police, the STATE**
**OF NEW JERSEY, and JOHN/JANE DOES**
**1-10, being fictitious names for**
**persons whose identities are presently**
**unknown, individually and in their**
**official capacities,**

                Defendants.

------------------------------------

**Statement Pursuant To Local Civil Rule 10.1**

*PLAINTIFFS*

**MAURICE GORDON, SR. individually and
as Administrator of the ESTATE of
MAURICE GORDON, JR.**

4701 Twelfth Avenue South
Petersburg, Florida 33711

**RACQUEL BARRETT**
24 Colville Terrace - Flat B
Nottingham Hill, London Wii 2BU
United Kingdom

*DEFENDANTS*

**RANDALL WETZEL**
608 Ninth Street
Hammonton, New Jersey 08037

**GURBIR SINGH GREWAL**
Office of The Attorney General
Richard J. Hughes Justice Complex - 8th Floor, West Wing
25 Market Street
Trenton, NJ 08625-0080

**PATRICK J. CALLAHAN**
New Jersey State Police Headquarters
1040 River Road,
West Trenton, New Jersey 08628-0068

**STATE OF NEW JERSEY**
Office of The Attorney General
Richard J. Hughes Justice Complex - 8th Floor, West Wing
25 Market Street
Trenton, NJ 08625-0080

Plaintiffs, by their attorneys, as and for their complaint against defendants, allege as follows upon information and belief:

## PRELIMINARY STATEMENT

1. This action is brought pursuant to 42 USC § 1983.

2. This action arises out of defendants' violation of the constitutional and other rights of plaintiffs, more specifically from an incident where deceased plaintiff Maurice Gordon, Jr. (hereinafter, "Junior"), a 28-year-old unarmed black male, was shot in the torso at least six times by defendant Randall Wetzel, a New Jersey State Trooper, during a traffic stop.

3. Officer Wetzel killed Junior thereby.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff alleges violations of the United States Constitution and under 28 U.S.C. § 1343 because relief is sought for the deprivation of Plaintiffs' constitutional rights under color of State Law.

5. In addition to their claims under 42 USC § 1983, plaintiffs, respectfully bring their supplemental claims herewith pursuant to 28 USC § 1367.

6. On or about August 21, 2020 a Notice of Claim related to the incident which underlies this action was duly filed with the State of New Jersey.

7. Venue in the District Court of New Jersey is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within this district, and in the Camden Vicinage pursuant to this Court's Rules and Practices for the same reason.

## PARTIES

### *PLAINTIFFS*

9. **MAURICE GORDON JR.** (at times herein, "Junior") was an unarmed black man who died after being shot in the torso at least six times by defendant Randall Wetzel, a New Jersey State Trooper, during a traffic stop.

10. At the time of his death, Junior was employed as a livery driver and was attending Duchess County Community College in New York where he studied chemistry in the hope of someday becoming a teacher.

11. At the time of hist death, he was a resident of the

City of Poughkeepsie in the State of New York.

12. He had no criminal record.

13. **MAURICE GORDON SR.** (at times, "Gordon, Sr.) is the father of Maurice Gordon, Jr.

14. On or about January 21, 2021 he was issued Letters of Administration of his son's Estate by the Surrogates Court of the State of New York.

15. He appears in this action as a plaintiff both individually, and as Administrator of his son's Estate.

16. **RACQUEL BARRETT** is the mother of Maurice Gordon, Jr. She is a plaintiff in this action.

#### DEFENDANTS

17. **RANDALL WETZEL** is a white New Jersey State Trooper who, *inter alia*, knowing Junior was unarmed, nevertheless, shot him six times during a traffic stop.

18. **GURBIR SINGH GREWAL** is the Attorney General of the

State of New Jersey with ultimate authority over the New Jersey
State Police which is part of his Office.

19. **PATRICK J. CALLAHAN** is the Superintendent and
Commander of the New Jersey State Police.

20. **STATE OF NEW JERSEY** is the governmental authority and
employer of all defendants.

21. **JOHN/JANE DOES 1-10** are fictitious names meant to
represent persons, the identities of which are presently unknown
inasmuch as pertinent information and material which would allow
plaintiff to identify these persons and better specify their
conduct has been sequestered from plaintiffs by the Office of
defendant Grewal.

### STATEMENT OF FACTS

22. Plaintiffs repeat and reallege the factual allegations
in each paragraph preceding.

23. Because defendant Grewal's office has refused to
release pertinent information in its possession regarding the
events surrounding Junior's death, plaintiffs are limited and
impaired in making their factual allegations.

24. On May 22, 2020 at around 3:30 a.m., Junior's friend

spoke with the Poughkeepsie, New York Police Department to report concerns about Junior's mental state.

25.  As was known to his friend, Junior had an unfortunate history of psychiatric difficulties, although there was no history of violent expression arising from those difficulties.

26.  Although reported, the police were unable to locate Junior for a wellness check.

27.  Around 24 hours later, an off-duty Red Bank Police Officer ("PO 1") found Junior, who had been traveling southbound on the Garden State Parkway ("GSP"), in his car stopped in the middle lane of the highway near Exit 91.

28.  Junior's vehicle had apparently run out of gas.

29.  A short time later, an on-duty New Jersey State Trooper (P.O. 2) came upon Junior and called a tow truck.

30.  P.O. 2 returned to the scene around 4:08.

31.  At around 4:23, Junior left the scene after receiving some gas from the tow truck operator.

32.   Around 20 minutes later, he was found stopped on the GSP, this time in the left southbound lane, by P.O. 3, having again run out of gas near Exit 72.

33.   After receiving a ride from a civilian to Wawa where he purchased a container of gas and returning to his vehicle, Junior continued his road trip around 5:50.

34.   Around 6:13, Junior was stopped near Exit 62 allegedly for speeding by P.O. 4 (a/k/a herein as John Doe 1).

35.   P.O. 4 asked Junior where he was heading and he responded, "To the end of the video game."

36.   After ticketing Junior, Junior proceeded on his way.

37.   Around 6:26 a.m.[1] on May 23, 2020, Junior was again stopped for allegedly speeding as he traveled southbound on the GSP near Exit 50.

38.   The New Jersey State Police Officer that stopped him

---

[1]All times set forth herein refer to the corresponding time on the morning of May 23, 2020 unless otherwise specified.

was defendant Randall Wetzel.

39. Junior's car was disabled, as he apparently once again had run out of gas.

40. Around 6:30, Wetzel invited Junior to sit in the back of his vehicle.

41. Wetzel frisked Junior as Junior, appearing somewhat disoriented, walked to Wetzel's police car where he entered the rear seat.

42. Around 6:56 a.m. Junior asked Wetzel his name, which Wetzel provided.

43. Wetzel asked Junior if he was feeling okay, and Junior gave a slight nod in response.

44. Around 7:00 a.m. Wetzel asked Junior if he wanted his car towed and if he had money for payment or AAA.

45. In response, Junior acknowledged he had money but not AAA. Wetzel asked Junior if he wanted to leave with the tow truck driver or if he wanted Wetzel to drop him off.

46. Junior said he would leave the with tow truck.

47. Wetzel explained to Junior that the reason he was confining him to his police car was that there was a danger being outside in light of traffic.

48. Around 7:01, in response to Wetzel's inquiry, Junior acknowledged he had run out of gas.

49. Throughout his exchanges with Wetzel, Junior appeared slightly sullen and disengaged

50. At 7:06, Wetzel offered to give Junior a mask which he accepted.

51. Around 7:07, when Wetzel opened the rear door to give Junior the mask, Junior exited the police vehicle and was immediately physically engaged by Wetzel who commanded him repeatedly to "Get in the car."

52. This occurred after Junior had been sitting in the vehicle for 21 minutes.

53. Junior made his way to the back of the vehicle as

Wetzel pushed and pulled him.

54.  When at the rear of the vehicle, Wetzel called for backup.

55.  Junior ran back towards the front of the police car, closing the rear door as he passed it and attempted to enter the driver's side at the front of the vehicle.

56.  Wetzel dragged Gordon an estimated 15 to 20 feet behind the vehicle where he commanded him to get out of the car which was 15 to 20 feet away.

57.  While Junior resisted Wetzel's dragging and pushing, he does not appear to have attacked or otherwise defended himself.

58.  When Wetzel released Junior around 20 feet behind the vehicle, Wetzel sprayed him with pepper spray.

59.  While Wetzel continued to command Junior to get out of the vehicle which was 20 feet away from him, at no time did he command him to get down on the ground, put his hands up, freeze or tell Junior he was under arrest.

60.  As he again called for another unit, Junior jogged back towards the vehicle.

61.  Junior was again dragged out of the front sear towards the rear of the vehicle by Wetzel who, as he wrestled with Junior, fired six shot in rapid succession into his torso.

62.  This occurred at 7:08.

63.  At around 7:08, as Junior lay dying, Wetzel placed cuffs on the wrists of his limp arms.

64.  These cuffs were placed so tightly that, had Junior survived, he would have sustained permanent physical injury as a result of their placement.

65. At no time did Wetzel administer or attempt to administer first aid to dying Maurice Gordon Jr.

66.  At around 7:25 a.m., around 17 minutes after Wetzel fired six shots into Junior's torso, for the first time since the shooting first aid for Junior was attempted.  By that time, no pulse was detectable.

67.   At no time was Junior told he was under arrest.

68.   Notwithstanding the pronounced policy of defendants Grewal and Callahan, none of the officers involved were wearing body cams.

69.   At the time of these acts, persons of color were more than three times more likely to be subjected to violence and injury at the hands of New Jersey State Police Officers than their white counterparts.

70.   The foregoing was true notwithstanding acts of greater provocation by their white counterparts.

71.   Grewal and Callahan knew or should have known that New Jersey State Police Officers have a history of racism and racially disparate enforcement while performing their duties.

72.   Grewal and Callahan knew or should have known that New Jersey State Police Officers have a history of racism and race-based disparities in the use of force against civilians.

73.   Grewal and Callahan knew or should have known that New

Jersey State Police Officers have a history of racism and race-based disparities in the use of excessive force against civilians.

74.   Grewal and Callahan knew or should have known that New Jersey State Police Officers have a history of racism and race-based disparities in the use of deadly force against civilians.

75.   Grewal and Callahan failed to protect Junior by ensuring that appropriate safeguards were in place, and sufficient training was given, to protect citizens of color against disparate or racially-biased actions including, in this case, the use of deadly force.

## FEDERAL CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION — ON BEHALF OF ESTATE
### (Against Wetzel for Use of Excessive Force)

76.   Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

77. At the time of the incident complained of herein, Wetzel was an employee of the State of New Jersey and acted under color of law as a police officer.

78. The aforesaid actions of Wetzel were unreasonable, and the use of force was excessive, depriving decedent Maurice Gordon Jr. of rights, privileges, and immunities secured by the Fourth Amendment of the United States Constitution as well as his right to substantive due process under the Fifth and Fourteenth Amendments.

As a result thereof, Junior was subjected to assault, battery, conscious pain and suffering, and death.

**SECOND CAUSE OF ACTION – ON BEHALF OF ESTATE**
**(Monell Claims Against the State of New Jersey and**
**Against Gurbir Singh Grewal and Patrick J. Callahan,**
**individually and in their official capacities)**

79. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

80.   Defendants, knowing that persons of color were three times or more likely to be subjected to violence by New Jersey State Police Officers, even where there was less provocation precipitating such violence than from their white counterparts, failed to take reasonable steps to protect persons of color, including the decedent, from this disproportionate violence.

The injuries sustained by Maurice Gordon Jr. were the result of a policy, practice, custom, and/or usage of defendants in hiring and/or retaining officers without properly screening such employees as to racial animus and propensity for violence or failing to adhere to such policies as they may have regarding these issues.

81.   The injuries sustained by Maurice Gordon, Jr., were the result of a policy, practice, or custom of the State of New Jersey of failing to investigate, discipline, or retrain police officers who had engaged in prior acts of excessive force and racially motivated conduct or behaviors, or track interactions in a meaningful way to alert the State of persistent bad actors in light of the States well-documented issues with racial profiling.

82.   The injuries sustained by Maurice Gordon, Jr., were the result of the failure of the State of New Jersey to have policies for appropriately responding to civilians/motorists having health emergencies or emotionally disturbed persons.

83.   The injuries sustained by Maurice Gordon, Jr., were the result of the failure of the State of New Jersey to train its police officers how to appropriately respond to civilians/motorists having health emergencies or emotionally disturbed persons.

84.   The injuries sustained by Maurice Gordon, Jr., were the result of the failure of the State of New Jersey to adequately train its officers to properly engage in a continuum of force, including the use of physical force, deadly force, and tasers or to properly equip such officers to allow such engagement.

85.   The injuries sustained by Maurice Gordon, Jr., were the result of the failure of the State of New Jersey to adequately train its officers to prevent biases which lead to the disproportionate use of force - and use of disproportionate force - against persons of color.

86. As a result of the aforementioned policies, practices, custom, usages, and failures of the defendants, and its deliberate indifference to its duty to have such policies to ensure the safety and equal treatment of persons of color using its roadways, Maurice Gordon, Jr. sustained the injuries and deprivations aforementioned.

## STATE CLAIMS FOR RELIEF

### THIRD CAUSE OF ACTION — ON BEHALF OF ESTATE

### (Against Sgt. Randall Wetzel for Conscious Pain and Suffering)

87. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

88. Wetzel, without just cause, or provocation, assaulted, battered, issued vexatious commands, and used deadly physical force against Maurice Gordon, Jr.

These actions were not justified or warranted under the circumstances and were unreasonable and unnecessary.

89. As a result, the decedent suffered and experienced fear, including fear of impending death, severe emotional distress, and conscious pain, and suffering.

90. The State of New Jersey, the Offices of the Attorney General and the New Jersey State Police are responsible for the actions of Sgt. Randall Wetzel that were taken in the scope of his employment as a police officer.

**FOURTH CAUSE OF ACTION - ON BEHALF OF ESTATE**

**(Against Sgt. Randall Wetzel and The State of New Jersey for Death by Wrongful Act Pursuant to N.J.S.A. 2A:3 1-1, *et seq*.)**

91. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

92. Sgt. Wetzel, acting within the scope of his employment, caused the death of Mr. Gordon by use of a firearm without cause or justification.

93. Said actions render him liable for the wrongful death of Mr. Gordon, Jr.

94. The State of New Jersey is responsible for defendant Wetzel's actions taken in the scope of his employment as a police officer.

## FIFTH CAUSE OF ACTION – ON BEHALF OF ESTATE
## (Against Sgt. Randall Wetzel and
## The State of New Jersey for Assault and Battery)

95. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

96. The actions of Sgt. Wetzel were intentional, malicious, and were committed with wanton disregard for the rights of Mr. Gordon, Jr.

97. The actions of Sgt. Wetzel were unjustified and unnecessary in the performance of his duties as a police officer, were unreasonable and unwarranted, and constituted an excessive use of force.

98. The actions aforesaid constituted unlawful assaults and batteries upon Mr. Gordon, Jr.

99. As a result of said conduct of Sgt. Wetzel, Mr. Gordon, Jr. sustained serious and severe injuries, both physical and emotional.

100. The State of New Jersey is responsible for the actions of Sgt. Wetzel, as the acts were committed within the scope of his employment as a police officer.

### SIXTH CAUSE OF ACTION – ON BEHALF OF ESTATE
### (Against Sgt. Randall Wetzel and
### The State of New Jersey for Negligence)

101. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

102. Sgt. Wetzel acting within the scope of his employment negligently discharged his duties and thereby caused Mr. Gordon, Jr. to sustain the injuries and deprivations aforementioned.

103. The acts of negligence of Sgt. Wetzel included, but are not limited to, negligent handling of a firearm, failure to issue comprehensible and/or proper commands, failure to provide

first aid, negligent initiation of physical engagement, and other conduct that was improper under the circumstances.

104. The State of New Jersey is responsible for the negligence of its officers committed within the scope of their employment.

105. The State of New Jersey was negligent by failing to properly train Sgt. Wetzel in how to properly respond to traffic stops with apparently emotionally disturbed motorist, or in failing to take reasonable and adequate measures to ensure the avoidance of the conduct that occurred.

106. The State of New Jersey was negligent by failing to train Sgt. Wetzel in the use of tasers, physical force, deadly force, or the continuum of force, or in failing to take reasonable and adequate measures to ensure the avoidance of the conduct that occurred.

107. The aforementioned acts of negligence proximately cause the injuries sustained by Mr. Gordon, Jr.

**SEVENTH CAUSE OF ACTION – ON BEHALF OF MAURICE GORDON, SR. AND**
**RACQUEL BARRETT**

**(Against Sgt. Randall Wetzel and The State of New Jersey for**
**Loss of Consortium Pursuant to Death by Wrongful Act Statute**

**[N.J.S.A. 2A:3 1-1, *et seq.*] and Under Common Law)**

108.  Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

109.  As a result of the aforesaid negligent and bad conduct, excessive force, and failure to train or protect, Maurice Gordon, Jr. was wrongfully killed by defendant Wetzel, leaving behind his surviving father, Maurice Gordon, Sr. and mother, Racquel Barrett.

110.  As a result of the aforementioned conduct, plaintiffs Mom and Dad lost the pecuniary value of Maurice Jr.'s companionship, including his advice and guidance, as they grow older and are entitled to their damages as a result.

## **PUNITIVE DAMAGES**

111. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

112. The acts of defendant Wetzel were willful, wanton, malicious, and oppressive and were motivated solely by desire a desire to harm Mr. Gordon, Jr. without regard for his well-being and were based on lack of concern and ill-will towards Maurice Gordon, Jr. such acts, therefore, warrant an award of punitive damages.

The acts of defendant Wetzel were grossly negligent and/or egregious and such acts, therefore, warrant an award of punitive damages.

The acts, or failures to act, of defendants were grossly negligent or reflected an egregious indifference to the lives and safety of persons of color and reflect a different valuation of the lives and well-being of persons of color. Such acts, therefore, warrant an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiffs demand judgment against defendants:

A. Permanently enjoining defendants from failing to take all acts reasonably necessary to ensure that persons of color are not disproportionately subjected to violence or slaughter at the hands of New Jersey State Police Officers;

B. Awarding compensatory damages in the amount of fifty million dollars and damages as appropriate on consortium claims;

C. Awarding punitive damages in an amount to be determined by a jury;

D. Awarding costs of this action including attorneys' fees pursuant 43 U.S.C. § 1988; and

E. Any such other and further relief as this Court may deem to be proper and just.

**JURY TRIAL IS DEMANDED**

Dated:     White Plains, New York
           March 11, 2021


                        **THE WAGSTAFF FIRM, P.C.**

            By: _____
                        William O. Wagstaff III
                        75 South Broadway Suite 400
                        White Plains, New York 10601
                        Tel: 914-226-3300
                        Fax: 914-226-3301
                        William@Wagstaff.Legal


                        Neal Wiesner
                        34 East 23rd Street - 6th Floor
                        New York, New York 10010
                        Tel: 212-732-2225
                        Nwiesner@wiesnerfirm.com


                        *Counsel for Plaintiffs*