William O. Wagstaff III – 041322009
The Wagstaff Firm, P.C.
*Attorneys for Plaintiff*
75 South Broadway Suite 400
White Plains, New York 10601
(914) 226-3300
william@wagstaff.legal

Neal Wiesner - 007942004
Wiesner Law Firm, P.C.
*Attorneys for Plaintiff*
34 East 23rd Street - 6th Floor
New York, New York 10010
(212) 732-2225
nwiesner@wiesnerfirm.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

------------------------------------

**MAURICE GORDON, SR. individually and
as Administrator of the ESTATE of
MAURICE GORDON, JR., RACQUEL BARRETT,**

                        Plaintiffs,                  **FIRST AMENDED COMPLAINT**

    -against-

**RANDALL WETZEL, GURBIR SINGH GREWAL,**     **TRIAL BY JURY DEMANDED**
**Individually and in his official
capacity as Attorney General for the
State of New Jersey, PATRICK J.
CALLAHAN in his official capacity as
Colonel of the New Jersey State Police,
individually, and JOHN/JANE DOES
1-10, being fictitious names for
persons whose identities are presently
unknown, individually**

                        Defendants.
------------------------------------

**Statement Pursuant To Local Civil Rule 10.1**

*PLAINTIFFS*

**MAURICE GORDON, SR. individually and
as Administrator of the ESTATE of
MAURICE GORDON, JR.**
4701 Twelfth Avenue South
Petersburg, Florida 33711

**RACQUEL BARRETT**
24 Colville Terrace - Flat B
Nottingham Hill, London Wii 2BU
United Kingdom


*DEFENDANTS*


**RANDALL WETZEL**
608 Ninth Street
Hammonton, New Jersey 08037

**GURBIR SINGH GREWAL**
Office of The Attorney General
Richard J. Hughes Justice Complex - 8th Floor, West Wing
25 Market Street
Trenton, NJ 08625-0080

**PATRICK J. CALLAHAN**
New Jersey State Police Headquarters
1040 River Road,
West Trenton, New Jersey 08628-0068



    Plaintiffs, by their attorneys, as and for their Complaint

against defendants, allege as follows upon information and

belief:

## PRELIMINARY STATEMENT

1.   This action is brought pursuant to 42 USC § 1983.

2.   This action arises out of defendants' violation of the constitutional and other rights of plaintiffs, more specifically from an incident where deceased plaintiff Maurice Gordon, Jr. (hereinafter, "Junior"), a 28-year-old unarmed black male, was shot in the torso at least six times by defendant Randall Wetzel, a New Jersey State Trooper, during a traffic stop.

3.   Officer Wetzel killed Junior thereby.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff alleges violations of the United States Constitution and under 28 U.S.C. § 1343 because relief is sought for the deprivation of Plaintiffs' constitutional rights under color of State Law.

5.   In addition to their claims under 42 USC § 1983, plaintiffs, respectfully bring their supplemental claims herewith pursuant to 28 USC § 1367.

6.   On or about August 21, 2020, a Notice of Claim related to the incident which underlies this action was duly filed with the State of New Jersey.

7.   Venue in the District Court of New Jersey is proper under 28 U.S.C. § 1391(b) because a substantial part of the

events giving rise to this action occurred within this district, and in the Camden Vicinage pursuant to this Court's Rules and Practices for the same reason.

## **PARTIES**

### *PLAINTIFFS*

9.   **MAURICE GORDON JR.** (at times herein, "Junior") was an unarmed black man who died after being shot in the torso at least six times by defendant Randall Wetzel, a New Jersey State Trooper, during a traffic stop.

10.   At the time of his death, Junior was employed as an Uber Eats driver and was attending Dutchess County Community College in New York, where he studied chemistry in the hope of someday becoming a teacher.

11.   At the time of his death, he was a resident of the City of Poughkeepsie in the State of New York.

12.   He had no criminal record.

13.   **MAURICE GORDON SR.** (at times, "Gordon, Sr.) is the father of Maurice Gordon, Jr.

14.   On or about January 21, 2021, he was issued Letters of Administration of his son's Estate by the Surrogates Court of the State of New York.

15.   He appears in this action as a plaintiff individually and as Administrator of his son's Estate.

16.   **RACQUEL BARRETT** is the mother of Maurice Gordon, Jr. She is a plaintiff in this action.

*DEFENDANTS*

17.   **RANDALL WETZEL** is a white New Jersey State Trooper who, *inter alia*, knowing Junior was unarmed, nevertheless, shot him six times during a traffic stop.

18.   **GURBIR SINGH GREWAL** is the Attorney General of the State of New Jersey with ultimate authority over the New Jersey State Police, which is part of his Office.

19.   **PATRICK J. CALLAHAN** is the Superintendent and Commander of the New Jersey State Police.

20.   **JOHN/JANE DOES 1-10** are fictitious names meant to represent persons, the identities of which are presently unknown inasmuch as pertinent information and material which would allow plaintiff to identify these persons and better specify their conduct has been sequestered from plaintiffs by the Office of defendant Grewal.

**STATEMENT OF FACTS**

21.   Plaintiffs repeat and reallege the factual allegations in each paragraph preceding.

22.   Because defendant Grewal's office has refused to release pertinent information in its possession regarding the

events surrounding Junior's death, plaintiffs are limited and impaired in making their factual allegations.

23.   On May 22, 2020, at around 3:30 a.m., Junior's friend spoke with the Poughkeepsie, New York Police Department, to report concerns about Junior's mental state.

24.   As was known to his friend, Junior had an unfortunate history of psychiatric difficulties, although there was no history of violent expression arising from those difficulties.

25.   Although reported, the police were unable to locate Junior for a wellness check.

26.   Around 24 hours later, an off-duty Red Bank Police Officer ("PO 1") found Junior, who had been traveling southbound on the Garden State Parkway ("GSP"), in his car stopped in the middle lane of the highway near Exit 91.

27. Junior's vehicle had apparently run out of gas.

28.   A short time later, an on-duty New Jersey State Trooper (P.O. 2) came upon Junior and called a tow truck.

29.   P.O. 2 returned to the scene around 4:08.

30.   At around 4:23, Junior left the scene after receiving some gas from the tow truck operator.

31.   Around 20 minutes later, he was found stopped on the GSP, this time in the left southbound lane, by P.O. 3, having again run out of gas near Exit 72.

4

32.   After receiving a ride from a civilian to Wawa where he purchased a container of gas and returning to his vehicle, Junior continued his road trip around 5:50.

33.   Around 6:13, Junior was stopped near Exit 62 allegedly for speeding by P.O. 4 (a/k/a herein as John Doe 1).

34.   P.O. 4 asked Junior where he was heading, and he responded, "To the end of the video game."

35.   After ticketing Junior, Junior proceeded on his way.

36.   Around 6:26 a.m.[1] on May 23, 2020, Junior was again stopped for allegedly speeding as he traveled southbound on the GSP near Exit 50.

37.   The New Jersey State Police Officer that stopped him was defendant Randall Wetzel.

38. Junior's car was disabled, as he apparently once again had run out of gas.

39.   Around 6:30, Wetzel invited Junior to sit in the back of his vehicle.

40.   Wetzel frisked Junior as Junior, appearing somewhat disoriented, walked to Wetzel's police car, where he entered the rear seat.

---

[1]All times set forth herein refer to the corresponding time on the morning of May 23, 2020 unless otherwise specified.

41.   Around 6:56 a.m. Junior asked Wetzel his name, which Wetzel provided.

42.   Wetzel asked Junior if he was feeling okay, and Junior gave a slight nod in response.

43.   Around 7:00 a.m. Wetzel asked Junior if he wanted his car towed and if he had money for payment or AAA.

44.   In response, Junior acknowledged he had money but not AAA.  Wetzel asked Junior if he wanted to leave with the tow truck driver or if he wanted Wetzel to drop him off.

45.   Junior said he would leave with the tow truck.

46.   Wetzel explained to Junior that the reason he was confining him to his police car was that there was a danger being outside in light of traffic.

47.   Around 7:01, in response to Wetzel's inquiry, Junior acknowledged he had run out of gas.

48.   Throughout his exchanges with Wetzel, Junior appeared slightly sullen and disengaged

49.   At 7:06, Wetzel offered to give Junior a mask which he accepted.

50.   Around 7:07, when Wetzel opened the rear door to give Junior the mask, Junior exited the police vehicle and was immediately physically engaged by Wetzel, who commanded him repeatedly to "Get in the car."

51.   This occurred after Junior had been sitting in the vehicle for 21 minutes.

52.   Junior made his way to the back of the vehicle as Wetzel pushed and pulled him.

53.   When at the rear of the vehicle, Wetzel called for backup.

54.   Junior ran back towards the front of the police car, closing the rear door as he passed it, and attempted to enter the driver's side at the front of the vehicle.

55.   Wetzel dragged Gordon an estimated 15 to 20 feet behind the vehicle where he commanded him to get out of the car, which was 15 to 20 feet away.

56.   While Junior resisted Wetzel's dragging and pushing, he does not appear to have attacked or otherwise defended himself.

57.   When Wetzel released Junior around 20 feet behind the vehicle, Wetzel sprayed him with pepper spray.

58.   While Wetzel continued to command Junior to get out of the vehicle, which was 20 feet away from him, at no time did he command him to get down on the ground, put his hands up, freeze or tell Junior he was under arrest.

59.   As he again called for another unit, Junior jogged back towards the vehicle.

60.   Junior was again dragged out of the front sear towards the rear of the vehicle by Wetzel who, as he wrestled with Junior, fired six shots in rapid succession into his torso.

61.   This occurred at 7:08.

62.   At around 7:08, as Junior lay dying, Wetzel placed cuffs on the wrists of his limp arms.

63.   These cuffs were placed so tightly that, had Junior survived, he would have sustained permanent physical injury as a result of their placement.

64.   At no time did Wetzel administer or attempt to administer first aid to dying Maurice Gordon Jr.

65.   At around 7:25 a.m., around 17 minutes after Wetzel fired six shots into Junior's torso, for the first time since the shooting first aid for Junior was attempted.  By that time, no pulse was detectable.

66.   At no time was Junior told he was under arrest.

67.   Notwithstanding the pronounced policy of defendants Grewal and Callahan, none of the officers involved were wearing body cams.

68.   At the time of these acts, persons of color were more than three times more likely to be subjected to violence and injury at the hands of New Jersey State Police Officers than their white counterparts.

8

69.   In 2018, NJ.com, collating data on the use of force in New Jersey into a report found, inter alia, that statewide, black people were three times more likely to face force by police than white people.

70.   The foregoing was true notwithstanding acts of greater provocation by their white counterparts.

71.   Faced with the NJ.com report that black people were three times more likely to face force by police than white people, in 2018 defendant Grewal reportedly told NJ.com, "You've obviously highlighted shortcomings in the system, and we're committed to fixing whatever shortcomings there are to ensure we have the best system here in New Jersey to collect this information and to review it," he said.

72.   According to NJ.com, presented with the news organization's findings, defendant Grewal offered no defense of the system in place at the time and conceded it needed a complete overhaul.

73.   According to NJ.com, defendant Grewal had access to the data which formed the basis of its report while the Bergen County prosecutor, but conceded that he never made use of it, apparently because it was disordered.

74.   According to NJ.com, in 2018 defendant Grewal acknowledged the state has for years failed to properly track and stop police officers who might be using unnecessary force

during arrests.

75. Nevertheless, notwithstanding the foregoing and their seeming acknowledgment of the truth of it, defendants Grewal and Callahan have alleged before this Court that plaintiffs have failed "to plead actual facts showing that Grewal or Callahan were actually aware of such a custom or practice and were deliberately indifferent to it."

76. Further, notwithstanding the foregoing, defendants Grewal and Callahan have alleged before this Court that "allegations that the State's policies and training permit or condone racially motivated uses of force are not plausible in light of a vast array of publicly available and widely known information that this court may take judicial notice."

77. Perhaps more disturbing, defendants Grewal and Callahan claim before this Court that plaintiffs' allegations are not facially plausible because, "State statutory law actually mandates that an office within the Office of the Attorney General, OLEPS, engage in rigorous oversight and analyses of the State Police's actions, training, and internal investigations in an effort to ensure that members of State Police do not engage in racially motivated policing," even as defendant Grewal has publicly conceded his office did not do this.

10

78.   Defendants   Grewal   and   Callahan,   through   their attorneys, have argued before this Court the implausibility of things they knew to be true, and while conceding a statutory obligation to "engage in rigorous oversight and analyses of the State Police's actions, training, and internal investigations in an effort to ensure that members of State Police do not engage in racially motivated policing," omit defendant Grewal's public concessions that he did not do this.

79.   Grewal and Callahan knew or should have known that New Jersey State Police Officers have a history of racism and racially disparate enforcement while performing their duties.

80.   Grewal and Callahan knew or should have known that New Jersey State Police Officers have a history of racism and race-based disparities in the use of force against civilians.

81.   Grewal and Callahan knew or should have known that New Jersey State Police Officers have a history of racism and race-based disparities in the use of excessive force against civilians.

82.   Grewal and Callahan knew or should have known that New Jersey State Police Officers have a history of racism and race-based disparities in the use of deadly force against civilians.

83.   Grewal   and   Callahan   failed   to   protect   Junior   by ensuring that appropriate safeguards were in place, and sufficient training was given, to protect citizens of color

11

against disparate or racially biased actions including, in this case, the use of deadly force.

## FEDERAL CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION – ON BEHALF OF ESTATE

### (Against Wetzel for Use of Excessive Force)

84. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

85. At the time of the incident complained of herein, Wetzel was an employee of the State of New Jersey and acted under color of law as a police officer.

86. The aforesaid actions of Wetzel were unreasonable, and the use of force was excessive, depriving decedent Maurice Gordon Jr. of rights, privileges, and immunities secured by the Fourth Amendment of the United States Constitution as well as his right to substantive due process under the Fifth and Fourteenth Amendments.

As a result, thereof, Junior was subjected to assault, battery, conscious pain and suffering, and death.

**SECOND CAUSE OF ACTION — ON BEHALF OF ESTATE**

**(Against Gurbir Singh Grewal, individually and Patrick J. Callahan, individually for §1983 Supervisory Liability)**

87. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

88. Defendants, knowing that persons of color were three times or more likely to be subjected to violence by New Jersey State Police Officers, even where there was less provocation precipitating such violence than from their white counterparts, failed to take reasonable steps to protect persons of color, including the decedent, from this disproportionate violence in violation of the Fourteenth Amendment.

89. The injuries sustained by Maurice Gordon Jr. were the result of defendants' inaction in the training, supervision, and control of their subordinate employees, which defendant Wetzel is one of.

90. Defendants had actual knowledge that New Jersey Police Officers - their subordinates — were engaged in disparate treatment of persons of color in the course of effectuating their law enforcement duties and the statistics available to them informed both AG Grewal and Colonel Callahan of pervasive constitutional injuries to citizens like Junior.

13

91. Defendants' response to this knowledge was so inadequate that it shows deliberate indifference to the disparate treatment of Black people by New Jersey State Police Officers.

92. Defendants' inaction to address the disparate treatment of people of color by their officers, especially against the backdrop of a well-documented history of racial profiling by the New Jersey State Police, is causally linked to the Fourteenth Amendment violation suffered by Junior, which caused his death.

**THIRD CAUSE OF ACTION – ON BEHALF OF ALL PLAINTIFFS**

**(Against Gurbir Singh Grewal, individually and in his official capacity and Patrick J. Callahan, individually and in his official capacity for Permanent Injunction)**

93. Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

94. Junior was injured by the inactions of the defendants, and the Estate stands in his shoes for the purpose of this action.

14

95.    Defendants'    deliberate    indifference    to    their subordinates' disparate treatment of people of color violates the Fourteenth Amendment.

96. Decedent's   parents   have   been   injured   by   the defendants' inaction and continue to be injured as they grieve the loss of their son.

97. There   was   an   affirmative   causal   link   between defendants' violation of the Fourteenth Amendment and Junior's death, the cause of plaintiff parents' injuries.

98. While the plaintiffs seek compensatory damages, any monetary recovery does not adequately remedy defendants' continued violation of the Fourteenth Amendment, and those similarly situated will likely suffer the same injury if defendants are not enjoined from violating the Fourteenth Amendment through continued indifference to the disparate treatment of people of color.

99. Accordingly, plaintiffs seek a permanent injunction enjoining and restraining defendants from violating the Fourteenth Amendment through failure to make meaningful changes in the administration or implementation of their duties with respect to their subordinates' conduct and engagement with people of color.

15

## STATE CLAIMS FOR RELIEF

**FOURTH CAUSE OF ACTION – ON BEHALF OF ESTATE**

**(Against Sgt. Randall Wetzel for Conscious Pain and Suffering)**

100. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

101. Wetzel, without just cause, or provocation, assaulted, battered, issued vexatious commands, and used deadly physical force against Maurice Gordon, Jr. These actions were not justified or warranted under the circumstances and were unreasonable and unnecessary.

102. As a result, the decedent suffered and experienced fear, including fear of impending death, severe emotional distress, and conscious pain, and suffering.

**FIFTH CAUSE OF ACTION – ON BEHALF OF ESTATE**

**(Against Sgt. Randall Wetzel for Death by Wrongful Act Pursuant to N.J.S.A. 2A:3 1-1, *et seq.*)**

103. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

16

104.   Sgt.   Wetzel,   acting   within   the   scope   of   his employment,   caused   the   death   of   Mr.   Gordon   by   use   of   a   firearm without cause or justification.

105.   Said actions render him liable for the wrongful death of Mr. Gordon, Jr.

**SIXTH CAUSE OF ACTION – ON BEHALF OF ESTATE**

**(Against Sgt. Randall Wetzel for Assault and Battery)**

106.   Plaintiff   incorporates   the   allegations   contained   in the   previous   paragraphs   of   this   Complaint   as   if   fully   set   forth herein.

107.   The   actions   of   Sgt.   Wetzel   were   intentional, malicious,   and   were   committed   with   wanton   disregard   for   the rights of Mr. Gordon, Jr.

108.   The   actions   of   Sgt.   Wetzel   were   unjustified   and unnecessary   in   the   performance   of   his   duties   as   a   police officer,   were   unreasonable   and   unwarranted,   and   constituted   an excessive use of force.

109.   The   actions   aforesaid   constituted   unlawful   assaults and batteries upon Mr. Gordon, Jr.

110.  As a result of said conduct of Sgt. Wetzel, Mr. Gordon, Jr. sustained serious and severe injuries, both physical and emotional.

### SEVENTH CAUSE OF ACTION – ON BEHALF OF ESTATE
### (Against Sgt. Randall Wetzel for Negligence)

111.  Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

112.  Sgt. Wetzel acting within the scope of his employment, negligently discharged his duties and thereby caused Mr. Gordon, Jr. to sustain the injuries and deprivations aforementioned.

113.  The acts of negligence of Sgt. Wetzel included, but are not limited to, negligent handling of a firearm, failure to issue comprehensible and/or proper commands, failure to provide first aid, negligent initiation of physical engagement, failure to appropriately respond to a civilian/motorist having health an emergency or exhibiting signs of emotional disturbance. and other conduct that was improper under the circumstances.

114.  The aforementioned acts of negligence proximately cause the injuries sustained by Mr. Gordon, Jr.

18

**EIGHTH CAUSE OF ACTION – ON BEHALF OF MAURICE GORDON, SR. AND RACQUEL BARRETT**

**(Against Sgt. Randall Wetzel for Loss of Consortium Pursuant to Death by Wrongful Act Statute [N.J.S.A. 2A:3 1-1, *et seq.*] and Under Common Law)**

115. Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

116. As a result of the aforesaid negligent and bad conduct, excessive force, and failure to protect, Maurice Gordon, Jr. was wrongfully killed by defendant Wetzel, leaving behind his surviving father, Maurice Gordon, Sr. and mother, Racquel Barrett.

117. As a result of the aforementioned conduct, plaintiffs Mother and Father lost the pecuniary value of Maurice Jr.'s companionship, including his advice and guidance, as they grow older and are entitled to their damages as a result.

**PUNITIVE DAMAGES**

118. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

119.   The acts of defendant Wetzel were willful, wanton, malicious, and oppressive and were motivated solely by desire a desire to harm Mr. Gordon, Jr. without regard for his well-being and were based on lack of concern and ill-will towards Maurice Gordon, Jr. such acts, therefore, warrant an award of punitive damages.

120.   The acts of defendant Wetzel were grossly negligent and/or egregious, and such acts, therefore, warrant an award of punitive damages.

121.   The acts, or failures to act, of defendants were grossly negligent or reflected an egregious indifference to the lives and safety of persons of color and reflect a different valuation of the lives and well-being of persons of color.  Such acts, therefore, warrant an award of punitive damages.

### <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** plaintiffs demand judgment against defendants:

A.     Permanently enjoining defendants Grewal and Callahan from failing to take all acts reasonably necessary to ensure that persons of color are not disproportionately subjected to violence or slaughter at the hands of New Jersey State Police Officers;

20

B.   Awarding compensatory damages in the amount of fifty million dollars and damages as appropriate on consortium claims;

C.   Awarding punitive damages in an amount to be determined by a jury;

D.   Awarding costs of this action including attorneys' fees pursuant 43 U.S.C. § 1988; and

E.   Any such other and further relief as this Court may deem to be proper and just.

**<u>JURY TRIAL IS DEMANDED</u>**

Dated:     White Plains, New York
           June 14, 2021

                              **THE WAGSTAFF FIRM, P.C.**

                              /s/ William O. Wagstaff III
                    By:_____
                              William O. Wagstaff III
                              75 South Broadway Suite 400
                              White Plains, New York 10601
                              Tel: 914-226-3300
                              Fax: 914-226-3301
                              William@Wagstaff.Legal

Neal Wiesner
34 East 23rd Street - 6th Floor
New York, New York 10010
Tel: 212-732-2225
Nwiesner@wiesnerfirm.com
Of Counsel


***Counsel for Plaintiffs***